UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20043-CR-MORENO/LOUIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PHILLIP ARTHUR SANDERS,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS**

    This cause is before the Court on Defendant's Motion to Suppress Physical Evidence and Statement (ECF No. 17). This Motion has been referred to the undersigned by the Honorable Federico A. Moreno, United States District Judge, for a Report and Recommendation (ECF No. 20). Upon consideration of the Motion, Response by the government, and following an evidentiary hearing conducted on June 11, 2020,[1] I recommend that the Motion be denied.

**I.    BACKGROUND**

    Defendant is charged in this case by indictment with a single count of possessing a firearm after having been previously convicted of a felony, in violation of 18 U.C. § 922(g). The charges follow an investigation conducted by the Miami Beach Police Department, beginning with an anonymous tip of drug dealing out of an apartment in South Beach. The investigation led to a

---

[1] Defendant Sanders appeared at the hearing via video. He confirmed his consent to the hearing being conducted without his in-court appearance. The proceedings in the courtroom were viewable by Defendant Sanders via video, including the witnesses who testified at the hearing. Counsel was able to confer with Defendant Sanders via telephone, separately from the audio associated with the video link. Counsel additionally displayed to Defendant Sanders copies of the Government's exhibits prior to the hearing.

series of controlled purchases of narcotics out of the apartment using a confidential informant (CI), who had previous dealings with Defendant Sanders. The last controlled buy included the purchase of a firearm from Defendant Sanders, who has previously been convicted of a felony. The following facts are derived from the evidentiary hearing conducted on June 11, 2020.

**A. Hearing Evidence**

Detective Suniel Castellanos of the Miami Beach Police Department (MBPD) testified at the hearing that he received an anonymous tip of drug-dealing activity at an apartment in the building located at 1346 Alton Road, in Miami Beach. Another detective in his unit corroborated the information that the apartment was being used for drug sales, based on statements made by someone stopped leaving the apartment in the course of an unrelated investigation. Detective Castellanos involved a CI, who he testified has previously proven reliable to him, in the investigation. The CI was familiar with a person he knew as "Pheezy" who sold marijuana from an apartment at that address. The CI told Detective Castellanos that he had purchased a firearm from Pheezy some two years earlier. The CI was also familiar with a music video featuring Pheezy, and showed it to Detective Castellanos. Detective Castellanos shared the video with other detectives in his unit, and one detective recognized Pheezy as "Jason Jones," based on a recent arrest; he was identified as Defendant Sanders at the hearing by Detective Castellanos.

Detective Castellanos' CI had a phone number for Defendant and using that number, was able to arrange a purchase of marijuana. The first controlled buy occurred on May 27, 2018. After providing the CI with agency funds, he was sent, under surveillance, to apartment A6. The CI, while under surveillance, was admitted into the apartment. Defendant was not alone in the apartment; at least one other adult man and woman were inside. The CI bought the marijuana, returned to detectives, and turned over the narcotics. Detective Castellanos monitored the meeting

via audio and was able to hear Defendant promoting his music video in the background.

A second buy was conducted under nearly identical circumstances later the same day. A third buy was scheduled for June 4, 2018. This time, the CI arranged to buy a firearm from Defendant in addition to marijuana. The CI was given $500 to purchase a firearm from Defendant. When the CI arrived at apartment A6 to meet Defendant, he was told "Pheezy" was not there. The CI initiated a call to Defendant, who answered and then met the CI in a stairwell in the apartment complex. Defendant led the CI to another apartment in the complex, B5. Inside that apartment, Defendant displayed several firearms to the CI stored in a duffle bag. The CI selected a firearm and paid the Defendant $200 for the gun and $150 for the marijuana. The CI returned to the surveillance detectives without encountering anyone else, and turned over the firearm, marijuana, and unused money (the firearm cost less than what he had been provided to purchase it). Detective Castellanos testified that he believed the gun had rounds in it.

Based on the three controlled buys, Detective Castellanos applied for and obtained two search warrants—one for each of the two apartments in which Defendant had sold contraband to the CI.[2] On June 5, 2018, the MBPD unit conducted surveillance on the apartment to learn who was inside of the apartment and if the Defendant was there. Around 4:00 AM, Detective Castellanos saw the Defendant leave the apartment and get into the passenger side of a silver Nissan. At that point, Detective Castellanos believed he had probable cause to arrest Defendant based on the control buys.

Two detectives from the unit followed the silver Nissan and watched it stop a short distance from the apartment. Sanders got out of the passenger seat and into the driver's seat. Detective

---

[2] The Government offered into evidence the search warrants, which were admitted without objection as Exhibit 3 to the hearing.

Castellanos testified that he was aware that Sanders had no valid driver's license: during the course of the investigation, his crime analysis team had provided him with a report from Indiana that revealed Defendant's true name, reported that his license was suspended, and stated that a warrant had issued for his arrest for violating probation.[3]

Another detective involved in the surveillance contacted MBPD to request assistance in stopping the vehicle. Officer Earl Hackworth answered the call and responded to the area. Officer Hackworth testified at the hearing and explained that prior to the stop, he was informed that the driver of the vehicle (for which he was provided a description including tag number) was the subject of an ongoing investigation they were surveying in anticipation of executing the apartment search warrants that morning. Officer Hackworth further testified that he was told the driver had no valid license, that there was a warrant for his arrest, and that he would likely offer the alias name of "Jason Jones."

Officer Hackworth testified that he effectuated the stop based on the information provided to him. When he made contact with the Defendant, he asked for his license; Sanders responded that he did not have a license. Officer Hackworth asked for his name and date of birth; Sanders responded "Jason Jones" but provided his true date of birth. Using this information, Officer Hackworth was able to confirm in the Indiana database that Sanders had been issued an Identity Card only, but no driver's license. Officer Hackworth issued a citation for driving without a valid license[4] and transported Defendant to the police station. He conducted a search of Sanders' pockets and found a cloth bag containing loose bills of money. Among the bills found in the bag were those provided to the CI for the controlled purchases. Sanders moves to suppress the evidence seized

---

[3] A copy of the Criminal Intelligence Unit Report was admitted without objection as Exhibit 1 to the hearing.
[4] Admitted as Exhibit 4 to the hearing.

4

from him pursuant to Officer Hackworth's arrest.

### B. Motion to Suppress

Defendant Sanders moves to suppress the evidence seized following his arrest on the grounds that the police lacked reasonable suspicion to stop him, but rather acted on a hunch. In response, the Government contends that the traffic stop was supported by probable cause to believe that Sanders had sold the CI narcotics and a firearm, and was also supported by probable cause to believe that he was driving without a license. Finally, the Government notes that the lead detective had information of an outstanding warrant for Sanders. No reply was filed.

## II. DISCUSSION

A person has the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Traffic stops are seizures under the Fourth Amendment. *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir.2007). A traffic stop is constitutional if it is either based upon probable cause to believe a traffic violation occurred, or is justified by reasonable suspicion in accordance with *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir.2008). Reasonable suspicion requires a reasonable and articulable suspicion based upon objective facts that an individual is engaged, or about to engage, in criminal activity. *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). It must be more than an "inchoate and unparticularized suspicion or hunch." *Id.* (quotation omitted). There must be a minimal level of objective justification taken from the totality of the circumstances. *Id.*

The Government justifies its warrantless stop on three independent bases: probable cause to believe that Defendant had just engaged in criminal activity, that is, the sale of controlled substances and possession of a firearm by a convicted felon; probable cause to believe Defendant was presently committing the crime of driving without a license; and knowledge that Defendant

5

was wanted on an outstanding warrant, mandating his arrest on that warrant.[5] The evidence adduced at the hearing supports each of these bases for Defendant's stop.

### A. The Arresting Officer Had Probable Cause for the Stop

A warrantless arrest violates the Fourth Amendment unless the arresting officer has probable cause, that is, a reasonable belief that the suspect committed or was committing a crime, based on facts and circumstances within his knowledge. *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir.1992). Florida law makes it a crime to drive a motor vehicle upon a highway, unless the operator has a valid driver's license. Fla. Stat. § 322.03(1). Before conducting the stop, Officer Hackworth testified that he was advised that Sanders had no driver's license. Officer Hackworth confirmed this fact from available computer database; moreover, Sanders admitted to the officer that he had no valid driver's license. The evidence shows that the officer's belief that Sanders was driving without a license was reasonable and based on articulable facts; accordingly, the traffic stop and ensuing arrest were lawful. *United States v. Gardner*, 444 F. App'x 361, 364 (11th Cir. 2011).

Defendant avers that the evidence was insufficient to find that law enforcement knew that Sanders had no license before the stop, arguing instead that the detectives may have learned about his unlicensed status afterwards and now seek to justify the otherwise illegal stop on this ground. There was no evidence admitted that would support this argument. The lead detective testified that he received the report from his crime analysis team sometime after the first buy, on May 27, and

---

[5] In support of its proposition that the outstanding bench warrant gave the officers probable cause to stop and arrest Sanders, the Government cites to *U.S. v. Leon*, 468 U.S. 897, 920, n.21 (1984). Although Leon is not factually similar to the facts at hand, it supports the Government's argument that its officers had an obligation to carry out the warrant for Sanders' arrest. Defendant advanced no challenge to the existence of an outstanding warrant or to the legal argument made by the Government that the warrant required law enforcement to carry out the arrest.

before the third buy, on June 4, 2020. There is no evidence that Officer Hackworth remained involved in the investigation after the day of Defendant's arrest for him to have learned on a later date about the report, as Defendant theorizes. Thus, to credit the theory that law enforcement only learned of the report after Sanders' arrest, the undersigned would have to not only reject the testimony of both witnesses but also find that Officer Hackworth was informed of the report for the sole purpose of giving false testimony at the hearing. Having had the opportunity to observe both law enforcement officers testify, I credit the testimony by Officer Hackworth that he was advised by the supervising detective that Sanders did not have a valid driver's license; and credit Detective Castellano's testimony that he communicated this information to the surveillance team.

The evidence adduced at the hearing does not support Defendant's theory and I find Defendant here has not met his burden of persuasion. *United States v. Senese*, No. 18-CR-60076-BB, 2018 WL 3159733, at *4 (S.D. Fla. June 28, 2018), aff'd, 798 F. App'x 499 (11th Cir. 2020). ("While in certain well-defined situations the ultimate burden of persuasion may shift to the government upon an initial showing of certain facts by the defendant, it is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing.")

### B. The Arresting Officer Had Probable Cause Based on The Prior Controlled Buys

The Government further advances probable cause based on Defendant's participation in controlled buys of narcotics and a firearm out of the apartment building from which Defendant was surveilled leaving shortly before the stop. Defendant raises a single challenge to this basis for justifying the stop: that the probable cause was lacking because it was solely on the hearsay statements of the CI. The evidence admitted at the hearing was not limited to hearsay statements of the CI. Detective Castellanos provided competent, first-hand testimony regarding what he saw and heard, including Defendant's own voice promoting his music video during the first controlled

buy. Defendant theorized that it could have been the other male occupant of the apartment who sold narcotics to the CI. There is no evidence that the other occupant, not Sanders, sold the contraband. Moreover, the theory is undermined by Detective Castellanos' testimony that on the third buy, the CI went to apartment A6 and was sent away by the other man in the apartment, and the CI called Defendant on the phone, after which Sanders met the CI in a stairwell and led him to another apartment.

The CI's statements were further corroborated by the evidence he turned over to law enforcement following each buy, including the loaded firearm and narcotics. While law enforcement's assessment of probable cause in this case was formed in part on hearsay statements of the CI, this will not defeat the Court's ability to find probable cause in fact supported the stop. "It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Illinois v. Gates*, 462 U.S. 213, 244–45 (1983) (internal quotations omitted). Because the CI's hearsay statements on which law enforcement relied were both specific and substantiated by personal observation, the evidence was sufficient to show probable cause and reasonable grounds for Officer Hackworth's traffic stop. *Draper v. United States*, 358 U.S. 307, 312 (1959).

### C. Officer Hackworth's Search of Sanders' Pocket was Permissible

Even if probable cause was wanting at the time of the stop, Officer Hackworth unquestionably had probable cause for Sanders' arrest following his confirmation that Sanders had no valid license. *United States v. Tinkle*, 655 F.2d 617, 623 (5th Cir. 1981) ("in determining probable cause, the factual situation which must control is that which exists at the moment of arrest."). The subsequent search and seizure, having been made incident to that lawful arrest, were

likewise valid. *Draper v. United States*, 358 U.S. 307, 314 (1959). The Government relies on *Arizona v. Grant*, 556 U.S. 332, 339 (2009), for the proposition that its officers legally searched Sanders as incident to his arrest for driving without a license. In *Arizona*, the Court upheld the boundaries it set forth in *Chimel* that a search incident to arrest includes "the arrestee's person and the area 'within his immediate control.'" *Arizona*, 556 U.S. at 339 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Hence, the Government argues that based on the boundaries upheld in *Arizona*, the officers lawfully searched Sanders and the evidence uncovered – the $6,054 found in his pants – was incident to his arrest and should not be suppressed.

### III. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant Phillip Sanders' Motion to Suppress Evidence (ECF No. 16) be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

Respectfully submitted, in Miami, Florida, this 22nd day of June, 2020.

_____
LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE